UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA M. PEREZ, | ) NO. EDCV 04-00877-MAN |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| v. | ) |
| | ) AND ORDER |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) ) ) |
| Defendant. | ) |

Plaintiff filed a Complaint on July 16, 2004, seeking review of the decision of the Social Security Commissioner ("Commissioner") denying her application for disability insurance benefits ("DIB"). 42 U.S.C. § 405(g). On August 25, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on April 27, 2005, in which: Plaintiff moves for an order reversing the Commissioner's decision denying benefits and directing the payment of benefits or, alternatively, remanding the case; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed her application for DIB on August 3, 2001. (Administrative Record ("A.R.") 59-62.) Plaintiff claims to have been disabled since June 27, 1993, due to problems arising out of a back injury, as well as depression. (A.R. 14, 59, 462, Joint Stip. at 3-4, 7-8, citing portions of A.R. 385-402.) She has past relevant work experience as a tally clerk and citrus packer. (A.R. 14.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On May 7, 2003, Plaintiff, who was represented, appeared personally and testified at a hearing before Administrative Law Judge Jacqueline Drucker ("ALJ"). (A.R. 434-83.) On August 1, 2003, the ALJ denied Plaintiff's request for DIB, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 13-18, 4-6.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In her August 1, 2003 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, and was insured for benefits only through September 30, 1998. (A.R. 17.) The ALJ found that, as of September 30, 1998, Plaintiff had an impairment or combinations of impairments that were considered "severe," but that Plaintiff did not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4. (*Id.*) The ALJ found that Plaintiff's allegations regarding her impairments

were not credible.  (*Id.*)

In addition, the ALJ found that Plaintiff had the following residual functional capacity prior to September 30, 1998:

> [Plaintiff could] lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She could stand and/or walk about 4 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday.  She could not climb ladders but could balance, kneel, stoop, squat, crouch, and crawl frequently.  She could not work in exposure to unprotected heights or around dangerous moving machinery.  No environmental work restrictions or limitations were applicable.[1]

(A.R. 17.)  The ALJ further found that Plaintiff's impairments did not preclude her from performing her past relevant work as a tally clerk. (*Id.*)  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (A.R. 18.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial

---

[1]  This refers to work at the "light" exertional level, which is defined as:  "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Here, Plaintiff alleges two issues. First, Plaintiff contends that the ALJ erred by failing to consider the reports completed by Dr. David Gross, a psychiatrist and state agency physician. Second, Plaintiff contends that the ALJ improperly assessed the "severity" of her mental

impairment at Step Two of the five-part sequential analysis for determining disability. (Joint Stip. at 3.) Given the close relationship between these two issues, the Court will address them together.

**The ALJ's Conclusion That Plaintiff's Alleged Mental Impairment Was Not "Severe" Constitutes Error**.

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" Smolen, 80 F.3d at 1290 (citing Social Security Ruling 85-28, and Yuckert v. Bowen, 841 F.2d 303 (9th Cir. 1988)); 20 C.F.R. § 416.921 ("[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities"); *see also* Bustamante v. Massanari, 262 F.3d 949, 955-56 (9th Cir. 2001)(ALJ's finding that claimant's mental impairment was not severe was not supported by substantial evidence, because every mental health professional who examined claimant found significant mental problems). The "severity" requirement is merely "a *de minimis* screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(citing Smolen, 80 F.3d at 1290). "[A] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*." Social Security Ruling 85-28 (emphasis added).

Here, the ALJ's decision contains no discussion of the evidence in the record pertaining to Plaintiff's mental limitations, including the

Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment completed by Dr. Gross, a state agency physician. Nevertheless, the ALJ implicitly rejected Plaintiff's claimed mental impairment as "not severe on or before September 30, 1998," her last insured date. (A.R. 16.) Plaintiff contends that the ALJ's finding that she does not have a "severe" mental impairment is erroneous. (Joint Stip. at 7-8.) Plaintiff further maintains that the ALJ's failure to address Dr. Gross's "moderate" limitations was error. (Joint Stip. at 3-4.)

In Dr. Gross's September 19, 2002 Psychiatric Review Technique form, he found that Plaintiff had "moderate" limitations in: activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace; but she would experience no episodes of decompensation. (A.R. 395.) In Dr. Gross's corresponding September 19, 2002 Mental Residual Functional Capacity Assessment, he found that Plaintiff had "moderate" limitations in: one category of understanding and memory; six categories of sustained concentration and persistence; five categories of social interaction; and two categories of adaptation. (A.R. 399-400.) In addition, Dr. Gross specifically noted that Plaintiff's mental residual functional capacity was limited, as follows: 1) "<u>Understanding and Memory</u> are compatible with remembering short and simple instructions"; 2) "<u>Concentration and Attention</u> should be adequate for simple repetitive tasks for a full workday and full workweek"; 3) "<u>Social Interaction Capacity</u> should be adequate for dealing with peers and supervisors, but not with the public"; and 4) "<u>Adaptation Capacity</u> should be intact for the usual work setting." (A.R. 401.) Dr. Gross further noted that:

> There are no psychiatric treating sources. The current psychiatric [consultative examiner] raises questions about [Plaintiff's] reliability and cooperation. The conclusion is mild depression, but [medical source statement] says prognosis is probably poor. There is no evidence to support an inability to sustain [non-public simple, repetitive tasks].
>
> Condition should permit sustained non-public [simple, repetitive tasks].

(A.R. 403.)

Dr. Gross did not indicate whether Plaintiff would have had any mental limitations on or before September 30, 1998. However, Dr. Gross's findings that Plaintiff had "moderate" limitations in numerous categories of mental functioning suggest that it is quite possible that Plaintiff's mental impairment may have met the *de minimis* standard for a finding of "severity" at Step Two on or before September 30, 1998, her last insured date.[2] Critically, the ALJ should have addressed Dr. Gross's reports and provided his reasons, if any, for concluding that these reports do not have any bearing on Plaintiff's mental status prior

---

[2] As the Ninth and other Circuits have opined, because mental illness may be progressive in nature and the evidence of its date of onset may be ambiguous, the Commissioner cannot infer an onset date unless such inference is based on an informed judgment, which requires the assistance of a medical advisor. *See* Morgan v. Sullivan, 945 F.2d 1079, 1082 (9th Cir. 1991); *see also* Walton v. Halter, 243 F.3d 703, 709 (3d Cir. 2001); Spellman v. Shalala, 1 F.3d 357, 362-63 (5th Cir. 1993); Blankenship v. Bowen, 874 F.2d 1116, 1122-23 (6th Cir. 1989). In this case, although the ALJ utilized a medical expert, Dr. Armand Toomajian, the expert was not asked about, nor did he address, Plaintiff's possible mental impairment, much less discuss an onset date. (A.R. 465-72.)

to September 30, 1998. *See* 20 C.F.R. § 404.1527(f)(2)(i) ("administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled. *See* § 404.1512(b)(6)"); Social Security Ruling 96-6p, ("[a]dministrative law judges and the Appeals Council may not ignore [opinions] of State agency medical and psychological consultants and other program physicians regarding the nature and severity of an individuals impairments] and must explain the weight given to these opinions in their decisions").

Defendant contends that the ALJ's error, if any, in rejecting Dr. Gross's findings without comment, was "harmless," because the record contains no evidence suggesting that Plaintiff had any mental impairment prior to her September 30, 1998, last insured date.[3] (Joint Stip. at 4-7.) However, the record does contain some, albeit limited, evidence

---

[3] The authority Defendant cites to support this argument, that it was harmless error for the ALJ to fail to discuss evidence in the record from a qualified medical source dated after Plaintiff's last insured date, is factually dissimilar and, therefore, unpersuasive. *See, e.g.*, Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (substantial evidence supported the ALJ's decision that the claimant was not disabled, even though the claimant's physician submitted a letter following the ALJ's decision and at least three years after her eligibility period ended opining that the claimant had been totally disabled during the entire eligibility period, because the opinion of a claimant's physician on the ultimate issue of disability is not binding and the Appeals Council provided clear and convincing reasons for rejecting it); Flaten, 44 F.3d at 1461 (a claimant who applies for DIB after the expiration of his insured status bears the responsibility for establishing disability prior to that date and, although a claimant may establish continuous disabling impairment by means of a retrospective diagnosis, the ALJ provided specific, legitimate reasons for rejecting the opinion letter of the claimant's treating physician); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996)(the ALJ properly rejected check-off reports regarding a mental impairment when there was a complete lack of any other medical evidence showing that the claimant had a mental impairment, but making no mention of "harmless" error).

1 indicating that Plaintiff suffered from depression and had taken anti-
2 depressant medication prior to her last insured date. (*See, e.g.*, A.R.
3 163-64 -- November 16, 1994 report by Dr. Reza Nazemi stating, "Should
4 [Plaintiff] fail to respond to this treatment, I would then strongly
5 recommend referral to a psychiatrist for evaluation and treatment of
6 depression"; 246-47 -- Desert Orthopedic Center progress noted dated
7 January 13, 1993, and September 25, 1993, indicating that Plaintiff was
8 taking Xanax; 250 -- Dr. George G. Glancz's January 7, 1993 report
9 indicating that Plaintiff was taking Xanax; 295 -- Dr. S. C. Shah's July
10 13, 1992 report noting that Plaintiff reported having anxiety attacks
11 but denies any "unusual emotional or mental stress"; 408-11 -- January
12 18, 2003 report from Dr. Jose Luis Meneses Imay, Plaintiff's treating
13 physician at the Indepedencia Clinic in Mexicali, Mexico, stating that
14 he treated Plaintiff from January 14, 1998, to December 4, 1999, and
15 that Plaintiff suffered from "depression and anxiety due to prolonged
16 pain.")  Defendant further contends the ALJ reasonably relied on the
17 testimony of Dr. Armand Toomajian, the non-examining medical expert, who
18 testified that Plaintiff was not disabled on or before her last insured
19 date. (Joint Stip. at 5.)  However, although Plaintiff testified at the
20 hearing that she becomes "very depressed" (A.R. 462), as noted above,
21 Dr. Toomajian did not address her claimed depression or discuss any
22 evidence pertaining to her mental health issues and limitations (A.R.
23 465-72).

25 Based on the present record, it cannot be determined what mental
26 limitations, if any, Plaintiff had on or before September 30, 1998, her
27 last insured date. While any mental limitations that Plaintiff may have
28 had on or before September 30, 1998 may not have been disabling, the

Court cannot confirm that the ALJ's findings, *to wit*, that Plaintiff's residual functional capacity contained no mental limitations and that Plaintiff could have performed her past relevant work during that time period, are based on substantial evidence. Thus, the record should be developed on this issue. *See* Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993)(Commissioner has an affirmative duty to develop the record, even if the claimant is represented by counsel); 20 C.F.R. §§ 404.1512(e), 416.912(e)(duty to re-contact treating physician); *see also* 20 C.F.R. §§ 404.1512a(b), 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity or insufficiency in the evidence).

In sum, the record contains evidence indicating that Plaintiff's claimed mental impairment may have met the *de minimis* threshold for finding "severity" under the Social Security regulations prior to Plaintiff's September 30, 1998 last insured date. Thus, the ALJ's finding that Plaintiff did not have a "severe" mental impairment and no mental limitations prior to September 30, 1998, without even addressing evidence of record regarding her depression including the reports of Dr. Gross, constitutes reversible error.

**Remand Is Required**

Remand is appropriate to allow the ALJ the opportunity to correct the above errors. *See* McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

///
///

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 24, 2006.

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE